IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TIMOTHY WAYNE CHILTON,

       Petitioner,

v.                                        CASE NO. 5:11-cv-45-RH-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition.") The Petition stems from Petitioner's Bay County, Florida, convictions for two counts of vehicular homicide and one count of leaving the scene of an accident with death, for which Petitioner is serving a life sentence. Respondent filed a response and an appendix with relevant portions of the state-court record (Docs. 21, 22, 23, 25), and Petitioner filed a reply. (Doc. 26.) Upon due consideration of the Petition, the response, the reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

The relevant portions of the record may be summarized as follows. Petitioner was charged with two counts of vehicular homicide, one count of leaving the scene of

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

an accident involving death, one count of leaving the scene of an accident involving

personal injury, and one count of driving while license suspended or revoked involving

death after a Bay County collision in which two people were killed.  (App. Ex. A.)  Prior

to trial, Petitioner rejected a plea offer from the state for a total twenty-year sentence.

On the morning of jury selection, Petitioner changed his mind and decided to accept the

state's offer.  However, after speaking with the family of the victims, the state asserted

that the plea offer was no longer available, and Petitioner continued to trial.

Petitioner was convicted of two counts of vehicular homicide, one count of

leaving the scene of an accident involving death, and one count of driving while license

suspended or revoked involving death.  (Ex. A.)  At sentencing, the parties and the

Court discussed Petitioner's prior criminal convictions in Ohio.  (Ex. B at 353-90.)  The

trial court sentenced the Defendant to a life sentence after determining that the points

for Petitioner's prior offenses were sufficient to qualify for a life sentence. (Ex. B at 392-

96.)  After appeal, Petitioner's convictions and sentences were affirmed *per curiam*

without opinion.  (Ex. F; *Chilton v. State*, 959 So.2d 719 (Fla. 1st DCA 2007.))

Petitioner filed a postconviction motion pursuant to Fla. R. Crim. P. 3.850,

asserting that his trial counsel rendered ineffective assistance by failing to advise him

that if he rejected the State's plea offer and was convicted at trial he faced a life

sentence based on his score sheet.  (Ex. K.)  The state court ordered an evidentiary

hearing and appointed postconviction counsel for Petitioner.  (*Id*.)  Following the

evidentiary hearing, the state court denied Petitioner's motion, finding that he failed to

establish that even if he had been correctly advised he was facing a life sentence that

he would have accepted the state's plea offer. *(Id.* at 27.) The state court further held that there was no evidence that the trial court would have accepted the plea deal because twenty years was a substantial downward departure for such a crime. (*Id.*) The First DCA affirmed *per curiam* without written opinion. (Ex. O; *Chilton v. State*, 49 So.3d 749 (Fla. 1st DCA 2010)(unpublished)). Petitioner also unsuccessfully pursued state habeas relief. (Exs. G, J; *Chilton v. State*, 978 So.2d 848 (Fla. 1st DCA 2008.)) Petitioner then filed the instant habeas corpus petition, which Respondent concedes is timely.

Petitioner asserts three grounds for relief. First, Petitioner contends that his trial counsel was ineffective for failing to advise him before he turned down the twenty year plea offer that he could face a life sentence if convicted. Petitioner's second claim is that the circuit court erred by instructing the jury on voluntary intoxication when the defense did not advance a voluntary intoxication defense. His third claim is that the trial court erred in allowing a witness, named Mrs. Black, to testify to matters that were not disclosed to the defense before trial. (Doc. 1.)

## Section 2254 Standard of Review

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a

determination of a factual issue made by a State court shall be presumed to be correct,"

and the petitioner "shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."  "'[A] state-court factual determination is not

unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance.'"  *Burt v. Titlow,* ___ *U.S.* ___,  2013 WL 5904117, *4

(2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the

state court's adjudication of the merits of the federal claim "resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*,

2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is

"highly deferential.")  "[C]learly established Federal law, as determined by the Supreme

Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme

Court, but decisions of lower federal courts may be considered to the extent that they

demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,*

318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("the decisions of other federal

circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to

the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly

established law compelled the circuit courts (and by implication would compel a state

court) to decide in a definite way the case before them.")  *See also, Carey v. Musladin,*

549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme

Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court" on the

issue.)  This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Burt*, 2013 WL 5904117, *4

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*.)  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams,* 529 U.S. at 412-13.  "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original.)  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  *Holland v. Jackson,* 542 U.S. 649, 652 (2004.)

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court

of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002.)) "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split.)) The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id.* at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was

objectively unreasonable.  *Gill*, 133 F.3d at 1290.

## <u>Standard of Review for Ineffective Assistance Claims</u>

The highly deferential standard of Section 2254 carries special force in habeas

cases asserting ineffective assistance claims: "Especially where a case involves such a

common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state

courts have now adjudicated in countless criminal cases for nearly 30 years—'there is

no intrinsic reason why the fact that a man is a federal judge should make him more

competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'"

*Burt*, 2013 WL 5904117, *4 (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct.

3037 (1976.)  As the Supreme Court explained, error alone is not enough, because

"[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different

from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation

marks omitted.)  And "even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable."  *Id*. at 786.

In view of the deference afforded to the state courts' adjudication of

constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court.  AEDPA requires 'a state

prisoner [to] show that the state court's ruling on the claim being presented in federal

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 2013 WL 5904117, *4 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011.)) "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786.)

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Harrington,* 131 S.Ct. at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

In *Missouri v. Frye*, 566 U.S. ___, 132 S.Ct. 1399 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S.Ct. 1376 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. *Frye*, 566 U.S. ___, 132 S.Ct. at 1404–08; *Lafler*, 566 U.S. at ___, 132 S.Ct. at 1384. Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during plea negotiations. *Lafler*, 566 U.S. at ——, 132 S.Ct. at 1384 (internal quotation marks omitted). The Court also considered how to apply the prejudice prong of the

ineffective-assistance-of-counsel test set forth in *Strickland* and concluded that, in order to show prejudice, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. *Frye*, 566 U.S. at ___, 132 S.Ct. at 1409; *Lafler*, 566 U.S. at ___, 132 S.Ct. at 1384–85.

## Discussion

### Ground One: Ineffective Assistance of Counsel for Failing to Correctly Advise of the Maximum Penalty

Petitioner's first claim is that trial counsel was ineffective for failing to correctly advise him that he could face a life sentence if convicted of his charges, which precluded him from making an informed decision on the plea bargain offer. Petitioner presented this claim in his Rule 3.850 postconviction motion. *(*Ex. K.)

At the evidentiary hearing on the Rule 3.850 motion, Petitioner testified that his counsel informed him that he was facing a thirty or thirty-five year maximum penalty if convicted. (Ex. L at 51.) He testified that he nevertheless believed he had a strong possibility of being convicted of a lesser offense and consequently receiving a lesser sentence if he went to trial. (Ex. L at 54.) Petitioner testified that he was informed of the plea offer, but he ran a "risk assessment" and took into account possible gain time, in electing to go to trial rather than accepting the plea deal. (Ex. L at 55.) He testified that he did not become aware that he faced a life sentence until the day of the

sentencing, and he did not see his score sheet until twenty-one months after he was sentenced.  (Ex. L at 56.)

Petitioner's trial counsel, James Dowgul, also testified at the hearing.  He testified that he would have advised Petitioner of the statutory maximum penalty for the charges, which was fifty-five years on all charges.  (Ex. L at 78.)  Mr. Dowgul testified that he never advised Petitioner that he was eligible for a life sentence because he was unaware that he faced one based on his prior offenses.  (Ex. L.)  Mr. Dowgul recalled that he discussed the state's plea deal offer with Petitioner and believed that it was a reasonable offer, but Petitioner was hostile to any plea offer.  (Ex. L at 80.)  Mr. Dowgul testified that his notes reflect that Petitioner would not even accept time served, because Petitioner's defense was that he was not the driver of the vehicle.  (Ex. L.)  Mr. Dowgul further stated that he did not see Petitioner's score sheet until the day of, or day before sentencing and, thus, he was unaware that Petitioner faced a possible life sentence until that time.  (Ex. L.)

In rejecting this claim on postconviction review, the state court summarized the testimony adduced at the evidentiary hearing and found that Petitioner failed to establish that he would have accepted the plea offer if he had been correctly advised of the maximum penalty. The state court found that there was no evidence that the court would have accepted the plea deal, given that the sentence was a substantial downward departure for such a conviction. Based upon this finding the Court concluded that Petitioner failed  to establish any prejudice from counsel's failure to correctly advise of the maximum sentence.  (Ex. K at 28-29.)  The state court explained that although

Petitioner claimed he performed a risk assessment when he was offered the plea, even

a 55 year sentence would have resulted in the equivalent of a life sentence because the

Petitioner was 45 years old at that time.  (*Id* at 28.)

The court also noted that trial counsel testified that Petitioner was hostile to any

plea deal.

> Trial counsel testified that at the time he communicated the plea offer to the defendant, the defendant was not receptive to any plea offer.  Prior to the plea offer being made, trial counsel testified the defense was that the defendant was not the driver of the vehicle.  The defendant was adamant that he was not the driver and that he was not even willing to accept time served.  However, at the time of the plea offer, trial counsel gave the defendant a copy of the FDLE lab report which showed the defendant's DNA was located on the driver's side airbag of the vehicle. Because of this DNA evidence, trial counsel correctly advised the defendant that his claim of not being the driver was significantly weakened and that the defendant should consider accepting the offer.  Trial counsel even had the Assistant Chief Public Defendant, Doug White, go and talk to the defendant about accepting the plea offer.  Indeed, trial counsel persuaded the Assistant State Attorney to keep the plea offer open until the Friday before the trial week.  Trial counsel also asked the defendant's brother to talk to the defendant about accepting the plea offer.  The evidence does establish that after a jury had been selected but before the opening arguments were made, the defendant did express an interest in accepting the plea offer of 20 years but by that time the victim's family had objected and the State had withdrawn the offer.  With this factual background the Court finds the defendant's self-serving statement after trial, conviction and sentence that, with knowledge he could have faced life imprisonment instead of 55 years, he would have accepted the plea offer of 20 years is not credible . . . To allow the defendant to now say he would have accepted the plea would reward the defendant for his unwillingness to consider an plea offer at the time of the offer when he knew of the strength of the evidence against him and the circumstances surrounding the offense he was charged with.  The defendant also should have known a sentence of 20 years was not unreasonable given the seriousness of the charges against him involving the death of two individuals.

> The defendant has proved that if the defendant had accepted the plea offer, he would have received the lesser sentence of 20 years instead of

the sentence he did receive.  However, there is no evidence that the Court would have accepted the plea offer.  The Court notes that there was no score sheet available at the time the plea offer was made but it would have been available at the time of the Court accepting the plea and sentencing.  The 20 year plea offer was a substantial downward departure from the ultimate score sheet sentence range.  The Court could have reasonably rejected the plea offer given the defendant's prior record.

Because the Defendant failed to establish that he would have accepted the plea if he had known he faced a life sentence, the defendant is not entitled to relief under his Motion for Post Conviction Relief.  (Ex. K at 29-30.)

The court concluded that Petitioner's "self-serving" testimony after the trial, conviction, and sentencing – that he would have accepted the plea deal if correctly advised – was "not credible."  *(Id.* at 29.)

"Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'"  *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)). Questions about the credibility of a witness involve a question of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court." *Id.*  It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence.  *Burt v. Titlow,* ___ *U.S.* ___, 2013 WL 5904117, *4.

Petitioner has pointed to no evidence demonstrating why this Court should disregard the conclusion of the state court.  To the extent that Petitioner relies upon his own testimony to support his claim, Petitioner's testimony is wholly insufficient to rebut

the state court's factual determination that Petitioner's testimony was not credible under the circumstances.

During the time Petitioner's habeas case has been pending before this Court, the Supreme Court decided *Missouri v. Frye*, __ U.S. ___, 132 S.Ct. 1399 (2012) and *Lafler v. Cooper*, __ U.S. __. 132 S.Ct. 1376 (2012). Under *Frye* and *Lafler*, a Defendant is required to demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. *Frye*, 132 S.Ct. at 1409; *Lafler*, 132 S.Ct. at 1384–85. While Petitioner did establish at the 3.850 hearing that the plea deal would have resulted in a lower sentence, he was unable to establish that he would have accepted the plea but for counsel's ineffectiveness or that the trial court would have accepted it. (Ex. K.) Although the state trial court did not have the benefit of *Frye* and *Lafler* at the time the trial court issued its decision on Petitioner's Rule 3.850 motion, the trial court nonetheless specifically addressed two of the *Frye* and *Lafler* elements. The trial court found that: (1) "the defendant has failed to establish that he would have accepted the offer if he had been correctly advised," and (2) "there is no evidence that the Court would have accepted the plea offer." (Ex. K at 28-29.) Thus, under *Frye* and *Lafler* the Petitioner has not demonstrated a reasonable probability that the result would have been different.

Accordingly, on this record, and in view of the deference afforded to the state court's rejection of this ineffective-assistance claim on the merits, the Court concludes

that Petitioner has failed to show that he is entitled to federal habeas corpus relief.

**Claim Two: The Trial Court Erred by Instructing the Jury on Voluntary Intoxication**

In his second claim, Petitioner argues that "the circuit court erred by instructing the jury on voluntary intoxication where Defendant did not advance a voluntary intoxication defense in violation of the Sixth and Fourteenth Amendments to the United States Constitution." Petitioner's counsel objected to this instruction. (Ex. C at 579, 628.)

Respondent contends that this claim is unexhausted. Before a petitioner files a federal habeas petition, he is required to exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires Petitioner to give the Florida state courts a "full and fair opportunity" to resolve all his federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999.) To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted.)

Respondent contends that Petitioner did not fairly present at the state level the claim that the trial court erred in instructing the jury on voluntary intoxication in violation of his federal constitutional rights. Specifically, Respondent contends that Petitioner did not present any federal due process argument in state court but only argument based

upon state law.

The Court concludes that this claim was fairly presented to the state court on appeal.  (Ex. E.)  In the argument section of the brief on direct appeal, Petitioner clearly presented this issue as a federal due process argument.  For example, on page 37 of Petitioner's brief on direct appeal, he argues that "the trial court violated appellant's right to due process of law by giving the instruction at issue.  U.S.C.A. amends. 5 & 14." (Ex. E.)  Under these circumstances, the issue has been fairly presented to the state court and thus this claim must be evaluated on the merits.  As discussed above, the Court presumes that the DCA adjudicated the issue on the merits, thus requiring deference, where, as here, the DCA affirms the trial court decision summarily.  *Gill*, 633 F.3d 1272, 1288.

Jury instructions are a matter of state law, and are evaluated in the context of the overall charge to the jury as a component of the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982).  The inquiry on habeas review is whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution.  *Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991.)

Reviewing the state court's instruction in the context of the entire proceeding, there is not a "reasonable likelihood" the jury applied the instruction in a way that violated Petitioner's federal constitutional rights.  The instruction that voluntary intoxication is not a defense was correct under state law.  FLA. STAT. ANN. § 775.05. ("Voluntary intoxication . . . is not a defense to any offense proscribed by law.")

The instruction was consistent with the evidence presented at trial. At trial

testimony had been adduced that the driver of the vehicle was stumbling and appeared to lay witnesses at the scene  to be drunk. Consequently, the instruction to the jury on voluntary intoxication was appropriate and thus there is no argument that Petitioner's due process rights were violated when the jury was given this instruction.

Accordingly, the Court concludes that the state court's rejection of this claim was not contrary to, or an unreasonable application of, federal law.  Petitioner's is, therefore, not entitled to federal habeas relief on this claim.

## Claim Three: The Trial Court Erred by Allowing Ms. Black to Testify to Matters Not Disclosed to the Defense

Petitioner's third claim is that "the trial court erred in allowing Ms. Black to testify to matters that were not disclosed to the defense violating the defendant's Fifth, Sixth and Fourteenth Amendments of the United States Constitution."  Respondent again argues that this claim is unexhausted because it was not fairly presented to the state court. The Court disagrees.  This claim was presented on direct appeal. In Petitioner's first ground presented on appeal Petitioner claimed that "[t]he trial court violated appellant's right to *due process* by conducting an inadequate *Richardson* inquiry and by allowing the state to present testimony that was the opposite of what had been provided in discovery and which was disclosed to defense counsel the first day of trial." The Court, therefore, has no trouble concluding that this issue has been properly exhausted. (Ex. E.)

Turning to the merits of Petitioner's claim, Petitioner alleges that the trial court denied him the opportunity to have a fair and impartial trial by permitting the state to

introduce the testimony of a witness, the full extent of which was not disclosed to the defense until the evening prior to trial. Respondent disputes this characterization, asserting that the state disclosed the witness in the state's request for a subpoena to bring the witness in question to Florida to testify. The state's request "indicated the witness had additional conversations with the defendant about him being the driver." According to the State, this information was hand-served on defense counsel on September 15, 2005, more than two weeks before trial.

At trial, defense counsel requested exclusion of the witness' testimony. The trial court denied the request. Petitioner's counsel did not request a continuance, although the trial court did permit the witness to be called out of order so that a transcript of her deposition could be prepared for impeachment purposes. (Ex. C at 145-154.)

The testimony that Petitioner objects to is inculpatory, rather than exculpatory and, therefore, *Brady*[3] does not apply. Further, the failure to disclose inculpatory evidence does not violate due process. *Weatherford v. Bursey*, 429 U.S. 545 (1977).

With regard to the dispute concerning the timing of the disclosure, even assuming Petitioner's allegations are correct that the defense did not learn of this evidence until the night before trial that fact is not sufficient to give rise to a constitutional violation. The Supreme Court has held that a defendant "does not have a constitutional right to notice of the evidence which the state plans to use to prove the

---

[3]*Brady v. Maryland*, 373 U.S. 83, 87 (1963). Brady held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

charges, and *Brady*, which addressed only exculpatory evidence, did not create one."

*Gray v. Netherland*, 518 U.S. 152, 154 (1996.)

The fact of the matter is that the prosecution had to resort to filing a motion to obtain Mrs. Black's testimony because she was an unwilling witness. Once it was made known that the witness had information that the Petitioner was the driver of the vehicle, the trial court directed that the witness should be deposed and a transcript provided for use at trial. There is no suggestion that the prosecution deliberately attempted to mislead the Petitioner or that the disclosure of the testimony of this witness, even shortly before trial, resulted in any fundamental unfairness.

Accordingly, the Court cannot conclude that the state court's decision to permit the witness, Ms. Black, to testify to matters that were not disclosed to the defense until shortly before trial, was contrary to, or an unreasonable application of, Federal law. Petitioner, therefore, is not entitled to federal habeas relief on this claim.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Therefore, the undersigned recommends that the district court deny a certificate of

appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct

the parties to submit arguments on whether a certificate should issue."  Thus, if there is

an objection to this recommendation by either party, that party may bring this argument

to the attention of the district judge in the objections permitted to this report and

recommendation.

In light of the foregoing, it is respectfully **RECOMMENDED**:

1.   The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254
(Doc. 1) should be **DENIED.**

2.    A certificate of appealability should be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this 27th  day of January 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

        A party may file specific, written objections to the proposed findings and
recommendations within 14 days after being served with a copy of this report and
recommendation.  A party may respond to another party's objections within 14 days after being
served with a copy thereof.  Failure to file specific objections limits the scope of review of
proposed factual findings and recommendations.